# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

AFRICAN COMMUNITIES TOGETHER, *et al.*,

      *Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

      *Defendants*.

Civil Action No. 19-cv-10432

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. THIS COURT MAY ENJOIN THE PRESIDENT FROM VIOLATING THE
   EQUAL PROTECTION CLAUSE........................................................................................ 2

II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR
    CONSTITUTIONAL CLAIMS ............................................................................................ 4

    A. *Arlington Heights* Is the Controlling Standard ......................................................... 4

    B. Plaintiffs Prevail Under the *Arlington Heights* Standard......................................... 5

    C. Even If this Court Applied *Trump v. Hawaii*, Plaintiffs Would Still Prevail ........ 6

    D. Defendants' Termination of DED Violates U.S. Citizen Plaintiffs' Due
       Process Rights ......................................................................................................... 8

III. WITHOUT A PRELIMINARY INJUNCTION, PLAINTIFFS WILL SUFFER
     IRREPARABLE HARM .................................................................................................... 10

IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH IN FAVOR
    OF A PRELIMINARY INJUNCTION .............................................................................. 10

V. THIS COURT SHOULD GRANT A NATIONWIDE INJUNCTION............................ 11

CONCLUSION................................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Armstrong v. Exceptional Child Center, Inc.*,
　135 S. Ct. 1378 (2015) ........................................................................................................... 4

*Asseo v. Pan Am. Grain Co.*,
　805 F.2d 23 (1st Cir. 1986) .................................................................................................... 6

*Caron Found. of Fla., Inc. v. City of Delray Beach*,
　879 F. Supp. 2d 1353 (S.D. Fla. 2012) .................................................................................. 6

*CASA de Maryland, Inc. v. Trump*,
　No. GJH-18-845, 2018 WL 6192367 (D. Md. Nov. 28, 2018) ........................................... 4, 5

*Centro Presente v. United States Dep't of Homeland Sec.*,
　332 F. Supp. 3d 393 (D. Mass. 2018) ........................................................................... 4, 5, 10

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
　473 U.S. 432 (1985) ............................................................................................................... 7

*Franklin v. Massachusetts*,
　505 U.S. 788 (1992) ........................................................................................................... 2, 3

*Grupo Mexicano de Desarollo v. Alliance Bond Fund*,
　527 U.S. 308 (1999) ............................................................................................................... 3

*Hawaii v. Trump*,
　878 F.3d 662 (9th Cir. 2017) ............................................................................................ 3, 11

*Int'l Refugee Assistance Project v. Trump*,
　857 F.3d 554 (4th Cir. 2017) .............................................................................................. 2, 3

*Mulero-Carrillo v. Román-Hernández*,
　790 F.3d 99 (1st Cir. 2015) .................................................................................................... 6

*N.C. State Conference of NAACP v. McCrory*,
　831 F.3d 204 (4th Cir. 2016) ................................................................................................ 11

*Nat'l Ass'n for the Advancement of Colored People v. United States Dep't of Homeland Sec.*,
   No. CV DKC 18-0239, 2019 WL 1126386 (D. Md. Mar. 12, 2019) .................................. 4, 5

*Nixon v. Fitzgerald*,
   457 U.S. 731 (1982) ............................................................................................................... 2

*Payne-Barahona v. Gonzales*,
   474 F.3d 1 (1st Cir. 2007) .................................................................................................. 8, 9

*Plyler v. Doe*,
   457 U.S. 202 (1982) ............................................................................................................... 7

*Ramos v. Nielsen*,
   321 F. Supp. 3d 1083 (N.D. Cal. 2018) ........................................................................ 4, 5, 11

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
   908 F.3d 476 (9th Cir. 2018) ............................................................................................... 11

*Saget v. Trump*,
   345 F. Supp. 3d 287 (E.D.N.Y. 2018) ............................................................................ passim

*Shea v. Ditech Fin. LLC*,
   208 F. Supp. 3d 380 (D. Mass. 2016) ................................................................................... 6

*Steele v. Bulova Watch Co.*,
   344 U.S. 280 (1952) ............................................................................................................. 11

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) .................................................................................................. passim

*U.S. Dep't of Agric. v. Moreno*,
   413 U.S. 528 (1973) ........................................................................................................... 6-7

*Vill. of Arlington Heights*,
   429 U.S. 252 (1977) ...................................................................................................... passim

**INTRODUCTION**

Plaintiffs seek to preliminarily enjoin Defendants from stripping Liberians of a lifesaving humanitarian relief program because of the nation of their origin. Thousands of Liberian nationals have lived in this country for decades under Deferred Enforced Departure (DED) or Temporarily Protected Status, and have contributed to communities, developed careers, and started families. In a matter of days, because of Defendant Trump's racism, Plaintiffs stand to lose everything.

In response, Defendants first raise the procedural issue of lack of service, which has since been cured as all Defendants now have been served. *See* Exs. 1–5 (Certificates of Service).

Defendants also suggest that Plaintiffs' should not obtain relief because they did not file this case until March 2019. The timing of the filing of the case is not a procedural bar but a factor to be weighed in the balancing of harms. Plaintiffs have already set forth their protracted efforts to secure legal counsel prior to February 2019, *see* Ex. 1 (Second Decl. of Amaha Kassa) ("Kassa Second Decl."); Ex. 2 (Second Decl. of Jonathan Jayes-Green) ("Jayes Second Decl."), while simultaneously conducting multiple advocacy campaigns to raise awareness about the dire need for the program. *See* Ex. 3 (Second Decl. of Yatta Kiazolu) ("Kiazolu Second Decl."); Kassa Second Decl.; Jayes Second Decl. The extent of the harm they would suffer if preliminary relief is not granted far outweighs the significance of the timing of the suit.

More importantly, Defendants do not deny the crucial facts that Plaintiffs presented demonstrating that President Trump has racial animus towards immigrants of color, that Plaintiffs will suffer irreparable harm, and that the Liberian government cannot handle the return of its nationals due to economic hardship and limited infrastructure. Coupled with the fact that the elements of a preliminary injunction clearly weigh in favor of Plaintiffs, the Court should enjoin Defendants from causing Plaintiffs grave, irreparable harm.

## **ARGUMENT**

### I. This Court May Enjoin the President from Violating the Equal Protection Clause

Defendants argue that the President can never be enjoined from acting in violation of the Equal Protection Clause because no statute explicitly creates such a cause of action against the President, nor was such relief "traditionally accorded by courts of equity" in 1789. Opp. at 6. Defendants are wrong. "The Supreme Court has never held that a court may *never* enjoin the President with regard to his official behavior, only that there is something unique about litigation against the President *eo nomine* that should cause a special judicial hesitation." *Saget v. Trump*, 345 F. Supp. 3d 287, 297 (E.D.N.Y. 2018) (internal citations and quotations omitted). To be sure, a "grant of injunctive relief against the President himself is extraordinary." *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992). However, it is within the power of the courts when the circumstances are sufficiently extraordinary to warrant it—as is the case here.

"The factors to consider in determining whether injunctive relief against the President would be appropriate are whether injunctive relief against a lower official or declaratory relief would be an adequate remedy and the level of intrusion into the Presidents' authority." *Saget*, 345 F. Supp. 3d at 297; *see also Int'l Refugee Assistance Project "IRAP" v. Trump,* 857 F.3d 554, 605 (4th Cir. 2017), *as amended* (May 31, 2017), *as amended* (June 15, 2017); *vacated and remanded on other grounds sub nom.*, *Trump v. Int'l Refugee Assistance*, __ U.S. __, 138 S. Ct. 253 (2017); *Nixon v. Fitzgerald*, 457 U.S. 731, 754 (1982). Defendants effectively concede that the first factor cautioning against enjoining the President is not present, observing that "the decision on whether to authorize DED rests in the sole discretion of the President." Opp. at 2. As only the President has the power to extend DED to any country, any injunction directing a lower official to extend DED for Liberia would be ineffective. Nor can Defendants credibly

argue that declaratory relief would be adequate where, as here, many of the Plaintiffs will suffer irreparable harm the moment DED for Liberia terminates at midnight on March 31, 2019.[1]

Finally, granting the preliminary injunction Plaintiffs seek would not unduly intrude on the President's authority. Such relief would merely maintain a *status quo* that has been in place since 1999—and which the President himself directed remain in place for a year following his decision to terminate DED—until discovery is completed and the Court provided with a robust factual record on which to determine if permanent injunctive relief is warranted.

Defendants cite *Franklin v. Massachusetts*, *IRAP v. Trump*, *Hawaii v. Trump*, and *Nedow v. Roberts* for the contention that this Court cannot grant the injunction Plaintiffs seek. But none of those cases involved a constitutionally impermissible action taken by the President alone, as opposed to in conjunction with subordinate state officials. The courts in each of those cases therefore determined that an injunction directed at the President was unnecessary to prevent harm to the plaintiffs. *See Franklin*, 505 U.S. 788 (1992) (alleging constitutional violations by Department of Commerce personnel); *IRAP*, 857 F.3d 554 (4th Cir. 2017) (alleging constitutional violations by Cabinet officials and personnel of multiple executive agencies); *Hawaii*, 859 F.3d 741 (9th Cir. 2017) (same); *Nedow*, 603 F.3d 1002 (D.C. Cir. 2010) (involving challenge to conduct of Chief Justice of the U.S. Supreme Court).

Defendants' contention that the relief sought by Plaintiffs is precluded under *Grupo Mexicano de Desarollo v. Alliance Bond Fund*, 527 U.S. 308 (1999), gets them nowhere. The core holding of *Grupo Mexicano* is "that the equitable powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to equity jurisprudence."

---

[1] Indeed, one of the Plaintiffs already received an urgent email from her employer that she "will have to resign" at the end of the month if she cannot receive a new work authorization through DED. Memo. Ex. 36 (Decl. of Jerrydean Simpson) ("Simpson Decl.") at ¶ 22; *see also* Simpson

*Id.* at 332.  But as the Court explained in *Armstrong v. Exceptional Child Center, Inc.*, also cited in Defendants' brief, "[t]he ability to sue to enjoin unconstitutional actions by . . . federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England."  135 S. Ct. 1378, 1384 (2015), *citing* Jaffe & Henderson, Judicial Review and the Rule of Law: Historical Origins, 72 L.Q. Rev. 345 (1956) (tracing equitable power to enjoin executive officials to no later than 1700).

## II. Plaintiffs Are Likely to Succeed on the Merits of Their Constitutional Claims

### A. *Arlington Heights* Is the Controlling Standard

Defendants claim that rational basis is the appropriate test the Court should apply instead of the *Arlington Heights* test with respect to Plaintiffs' Equal Protection claim.  Several recent decisions involving cancellation of TPS have applied the *Arlington Heights* test in evaluating whether administration officials violated the Equal Protection Clause in ending TPS status for refugees from Africa, Latin America, and the Caribbean.  *See Vill. of Arlington Heights*, 429 U.S. 252 (1977); *Centro Presente v. United States Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 409–13 (D. Mass. 2018); *CASA de Maryland, Inc. v. Trump*, No. GJH-18-845, 2018 WL 6192367, at *10–11 (D. Md. Nov. 28, 2018); *Nat'l Ass'n for the Advancement of Colored People ("NAACP") v. United States Dep't of Homeland Sec.*, No. CV DKC 18-0239, 2019 WL 1126386, at *6 (D. Md. Mar. 12, 2019); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1127–32 (N.D. Cal. 2018).  These cases are notable in their consistent application of *Arlington Heights*, their being recent, and their reliance on the same statements by the President as here.

Defendants' argument that the Court should apply the rational basis standard under *Trump v. Hawaii* (*"Trump"*), 138 S. Ct. 2392 (2018), is therefore contrary to the weight of authority.  Defendants failed with the same argument in the TPS cases.  *See Centro Presente*,

---

Decl. Ex. A.

332 F. Supp. 3d at 409–13; *CASA de Maryland, Inc.*, 2018 WL 6192367, at *10–11; *Nat'l Ass'n for the Advancement of Colored People*, 2019 WL 1126386, at *6; *Ramos*, 321 F. Supp. 3d at 1127–32; *Saget*, 345 F. Supp. 3d at 301–04.

As this Court observed in *Centro Presente*, *Trump* is distinguishable because two factors were present in that case that are not present here: "first, the limited due process rights afforded to foreign nationals seeking entry into the United States, and the particular deference accorded to the executive in making national security determinations." *Centro Presente*, 332 F. Supp. 3d at 411 (citations omitted). And second, neither President Trump's memorandum cancelling DED nor Defendants' opposition to a preliminary injunction cite any national security concerns relating to the termination of DED. *See id*.

### B. Plaintiffs Prevail Under the *Arlington Heights* Standard

Under the *Arlington Heights* standard, courts may consider circumstantial evidence of (1) "[t]he impact of the official action whether it bears more heavily on one race than another"; (2) "[t]he . . . administrative history . . . especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports"; (3) "[t]he historical background of the decision"; (4) "[t]he specific sequence of events leading up [to] the challenged decision"; and (5) "[d]epartures from the normal procedural sequence." *Arlington* Heights, 429 U.S. at 266–68 (citations and internal quotation marks omitted).

As discussed in detail in their Opening Memorandum, each of these factors supports Plaintiffs' motion.[2] First, termination of DED almost exclusively harms black immigrants. For the second and third factor, the President's disparaging comments about immigrants of color that indicate his Administration's agenda of limiting the immigration of people of color. Memo. Exs.

---

[2] Memorandum of Law Supporting Motion for Preliminary Injunction, ECF 13 ("Memo") at 9–12.

27–30.³  In satisfaction of the fourth factor, the termination of DED is part of a pattern of immigration policies by the Trump Administration that target immigrants of color including the termination of TPS for such immigrants.  *See* Complaint, ECF 1 ("Compl.") at ¶ 9.  And fifth, the termination of DED is a departure from the normal procedural sequence of the DED decisions of three previous administrations.

Defendants attempt to burden shift and claim that they have proffered a legitimate and non-discriminatory reason for the President's actions.  But burden-shifting is improper under *Arlington Heights* because it "can provide the ultimate question of discrimination" and because direct evidence suggesting discrimination can be enough.  *Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1372 & n.8 (S.D. Fla. 2012) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 70 F.3d 1272, at *5 (6th Cir. 1995)). ⁴

### C.  Even If this Court Applied *Trump v. Hawaii*, Plaintiffs Would Still Prevail

Plaintiffs would also prevail under the rational basis standard articulated in *Trump* because the termination of DED for Liberia was "not rationally related to a legitimate government purpose."  *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 107 (1st Cir. 2015).  The relevant inquiry is "whether the [] policy is plausibly related to the Government's stated objective."  *Trump*, 138 S. Ct. at 2420.  In making this assessment, the Court may consider extrinsic evidence.  *Id.*  Even in this deferential context, the Constitution forbids policies motivated by "a bare [] desire to harm a politically unpopular group."  *U.S. Dep't of Agric. v.*

---

³ Defendants' argument that Plaintiffs rely on hearsay statements that are "entitled to less weight," (Opp. at 14) is without merit.  Courts in this Circuit may accept hearsay material for a preliminary injunction.  *See Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 25–26 (1st Cir. 1986); *Shea v. Ditech Fin. LLC*, 208 F. Supp. 3d 380, 382 (D. Mass. 2016).

⁴ If the Court accepts Defendants' burden shifting—and even if the Court subscribes that Defendants' reasons are legitimate and actually meet their burden of production—then Plaintiffs can still succeed by showing that the "proffered reasons are pretextual."  *Id.*

*Moreno,* 413 U.S. 528, 535 (1973); *Trump*, 138 S. Ct. at 2423 (Kennedy, J., concurring) (citing *Romer v. Evans,* 517 U.S. 620 (1996)).

Defendants offer no justification for terminating DED for Liberia other than the inaccurate statement that conditions in Liberia have "sufficiently improved." Opp. at 13 (citing Memo., Ex. 1 at 2). Unlike *Trump*, Defendants have not suggested that the decision to terminate DED for Liberia was motivated by national security concerns.

Nor is there a legitimate implicit purpose for the termination of DED. Domestic considerations offer no rational basis for the termination. Far from being a drain on social programs or government resources, the record shows that Plaintiffs contribute immensely to their communities.[5] In sum, no legitimate policy objective of the United States will be advanced by deporting the thousands of Liberians currently living in the United States under DED.

Under *Cleburne* and *Plyler*, this non-existent benefit must be weighed against the extraordinary harm that Plaintiffs will suffer if Plaintiffs' motion is denied. *Plyler v. Doe*, 457 U.S. 202, 223–24, 230 (1982); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 447–50 (1985). Measured against that harm, the President's decision cannot stand.

Second, the factual predicates of the decision to terminate DED are demonstrably false. The rationale offered in President Trump's memorandum of March 27, 2018, that conditions in Liberia had sufficiently improved to warrant cancellation of DED is not only the barest of explanations; it is simply untrue. *See* Memo. Ex. 25 (long history of civil wars).
The human rights situation in Liberia remains dire, particularly for women and children. According to the very same United Nations report invoked by the Defendants as evidence of Liberia's "remarkable journey of transformation," human rights violations against women and

---

[5] *Amici Curiae* Brief, ECF 34, Attachment 1, at 3-12.

children in Liberia are serious and pervasive.[6]  Indeed, Defendants' own State Department has recognized the deplorable state of Liberia's human rights record.[7]

Defendants emphasize that Liberia recently held elections resulting in a relatively peaceful transfer of power.[8]  But they omit that the country's relative stability is extraordinarily tenuous.  "The new Government has inherited many challenges, not least of which are a dire economic situation and the limited progress achieved thus far in addressing the root causes of the conflict in Liberia." Opp. Ex. A at ¶ 67.  Indeed, the Trump administration's own State Department harbors "serious concerns about the nation's ability to maintain peace and deliver essential services to its population." Memo. Ex. 25.

The repatriation of large numbers of ethnic Liberians from the United States could upend this fragile equilibrium.  Liberia is the poorest country in the world. Compl. at ¶ 113.  "There are no jobs, no housing program and not even electricity and drinking water." Memo. Ex. 24, p. 2.

Third, as Plaintiffs discuss at length in their opening memorandum,[9] extrinsic evidence shows that racial animus, rather than any legitimate policy objective, was the motivating factor behind the termination. Memo. Exs. 27–30.

### D.  Defendants' Termination of DED Violates U.S. Citizen Plaintiffs' Due Process Rights

Defendants appear to concede that U.S. citizen Plaintiffs have the right to live in the United States, the right to family integrity, and the right to be free from a forced unconstitutional choice.  Despite this, relying on *Payne-Barahona v. Gonzales*, 474 F.3d 1 (1st Cir. 2007),

---

[6] "Between June 2017 and February 2018 . . . 596 cases of sexual and gender-based violence, including 391 cases of rape or sexual assault" were reported; "67.3 per cent of the victims were children."  Nevertheless, offenders enjoyed "impunity for such crimes."  Opp. Ex. A at ¶ 21.
[7] According to its 2017 Human Rights Report, "rape remained a serious and pervasive problem," among many other serious shortcomings in the field of human rights. Memo. Ex. 26.
[8] Opp. at 16.
[9] Compl. at ¶¶ 9-13, 94-102; Memo. at 6-7.

Defendants attempt to gloss over the constitutional issues raised by U.S. citizen Plaintiffs by claiming these important rights do not extend to Plaintiffs in this context. Opp. at 18. However, *Payne-Barahona* is distinguishable. In *Payne-Barahona*, Plaintiff was a legal permanent resident who was properly removable after committing an aggravated felony. He attempted to assert the rights of his children to live permanently with him in the United States. The Court held that the Plaintiff in that case could not prevail in his assertion of family integrity rights on behalf of his children. *Payne-Barahona*, 474 F.3d at 3.

This case has four substantial and important differences from *Payne-Barahona*. First, Plaintiff in that case was deportable for committing an aggravated felony, whereas Plaintiffs here have committed no crimes and are being ousted solely because of government action. The Court has never addressed the family integrity right or the weaker government interest in Plaintiffs who have resided legally for an extended period of time in the United States and who have committed not action as cause for their removal. Second, the Plaintiff in *Payne-Barahona* asserted only the right to family integrity in the United States, he did not assert the right to be free from a forced unconstitutional choice as Plaintiffs do here. The Court never addressed the merits of that claim in any context and must address that claim here. Third, Plaintiff in *Payne-Barahona* sought to remain in the United States with his children permanently, whereas Plaintiffs here only seek to assert claims on behalf of U.S. citizen children while they are minors. The government has demonstrated no valid interest in separating these families at this point as opposed to when the children reach the age of majority. Fourth, the Plaintiffs in this case risk a specific harm not present in *Payne-Barahona*. If U.S. citizen children are forced to abandon their homes and move to Liberia—a country where they have never lived, they also risk loss of their U.S. citizenship. Liberia does not recognize dual citizenship and a number of important rights in Liberia are only

accessible to citizens. *See* Ex. 4 (Decl. of Mohamedu F. Jones) ("Jones Decl."). The children in this context therefore are not choosing only between their parents and their home but also their home and their citizenship. *Id*.

### III. Without a Preliminary Injunction, Plaintiffs Will Suffer Irreparable Harm

As discussed in detail in the Plaintiffs' Opening Memorandum, in the absence of an injunction, Plaintiffs will become subject to forcible removal this upcoming Monday. Memo. at 7–8, 16–19. They will be forced to abandon their lives after living in the U.S. for over twenty years essentially losing their jobs, homes, and educational opportunities. Memo. at 7–8, 16–19; Kiazolu Second Decl. These circumstances go beyond the untenable position presented *Ramos* and *Centro Presente* and create a truly unprecedented legal and constitutional question for certain Plaintiffs as the U.S.-citizen children Plaintiffs will be forced to choose between staying in the United States without their parents and economic support, or forced to relocate to a foreign country where they will be compelled to renounce their U.S. citizenship. *See* Jones. Decl. Defendants do not dispute any of these points.

### IV. The Balance of Equities and Public Interest Weigh in Favor of a Preliminary Injunction

Defendants all but concede that they will not be harmed if the directives in the Presidential Memorandum ending DED are enjoined. Their reply is devoid of any argument that DHS has diverted resources, made additional hires, or issued additional directives in preparation for the termination of DED on March 31, 2019. Their only argument is that the President suffers harm if a policy decision he has made is enjoined. They need to show some case-specific injury, which they fail to have done. The forced removal of thousands of Liberian DED holders leading to the disruption of communities, the separation of families, and the harm of local economies is against the public interest. As 10 State Attorneys General recognized in their amicus brief, the

end of DED "would deprive the Amici States' economies and communities of positive contributions from coworkers and neighbors who have lived here for decades." *Amici Curiae* Brief, ECF 34, Attachment 1 at 1.  A preliminary injunction is in the public interest. *See Ramos*, 336 F. Supp. 3d at 1085–89.

## V.     This Court Should Grant a Nationwide Injunction

This Court has broad authority in equity to grant remedies that address the harms at issue. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952).  Nationwide injunctions can be granted, and are appropriate when there is nationwide harm.  *See, e.g.*, *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018) (upholding the grant of a nationwide injunction).  Relief for all those affected by a policy is particularly warranted where, as here, Plaintiffs allege discriminatory action in violation of the Constitution, because "once a court rules that an official act purposefully discriminates, the 'racial discrimination [must] be eliminated root and branch.'"  *N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 239 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 1399 (2017) (quoting *Green v. Cty. Sch. Bd.*, 391 U.S. 430, 437–39 (1968)).  Relief for all affected parties is further warranted in cases addressing immigration policy as there is a strong presumption in favor of a uniform national immigration policy.  *See Hawaii v. Trump*, 878 F.3d 662, 701 (9th Cir. 2017), *rev'd on other grounds*, __ U.S. __, 138 S. Ct. 2392 (2018).  This necessity in immigration cases was most recently noted by the Ninth Circuit in *Regents* where, in upholding a nationwide injunction that Court noted "'the Constitution requires a *uniform* Rule of Naturalization; Congress has instructed that the immigration laws of the United States should be enforced vigorously and *uniformly*; and the Supreme Court has described immigration policy as a comprehensive and *unified* system.'"  908 F.3d at 511 (citing *Texas v. U.S.*, 809 F.3d 134, 187–88 (5th Cir. 2015)) (emphases in original) (citations and internal quotation marks omitted).

In this case Plaintiff are residents of different states and two nationwide organizational Plaintiffs asserting constitutional defects in the termination of the DED immigration program. There is no way a limited injunction could provide remedy to all Plaintiffs, especially the organizational Plaintiffs who continue to divert resources to address the cancellation of the DED program. Further, a narrow injunction in this context would create a non-uniform immigration system and would declare a government action constitutionally invalid yet still allow DED holders to be deported under an invalid policy. The Court therefore can, and should grant the full relief requested by Plaintiffs in this matter.

Should the Court decide not to enjoin Defendant Trump, in the alternative, Plaintiffs request that Defendants Nielsen and DHS be enjoined from implementing the March 27, 2018 Presidential Memorandum terminating the DED program.[10] This includes continuing work authorization for DED holders, preventing DHS from starting any kind of removal proceedings, and prohibiting DHS from using any of these days to count as unlawful presence under 8 U.S.C § 1182(a)(9)(B).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Preliminary Injunction.

---

[10] *See Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 273 (4th Cir.), *judgment vacated and remanded on other grounds*, 138 S. Ct. 2710 (2018) (confirming that U.S. agencies and agency heads may be enjoined from implementing presidential proclamation).

Dated: March 27, 2019

Oren Nimni (BBO #691821)
Iván Espinoza-Madrigal (*pro hac vice*)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA  02110
Tel: (617) 988-0624
Fax: (617) 482-4392
onimni@lawyerscom.org

Maryum Jordan (*pro hac vice*)
Dorian L. Spence (*pro hac vice*)
Lawyers' Committee for Civil Rights
Under Law
1500 K Street NW, Suite 900
Washington, DC  20005
Tel: (202) 662-8600
Fax: (202) 783-0857
dspence@lawyerscommittee.org

Respectfully submitted,

*/s/ Timothy C. Blank*
Timothy C. Blank
Dechert LLP
One International Place
100 Oliver Street, 40th Floor
Boston, MA  02110
Tel: (617) 728-7100
Fax: (617) 426-6567
timothy.blank@dechert.com

Dennis H. Hranitzky (*pro hac vice*)
Michael A. Losco (*pro hac vice*)
Hayoung Park (*pro hac vice*)
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036
Tel: (212) 641-5647
Fax: (212) 698-3500
dennis.hranitzky@dechert.com

*Counsel for Plaintiffs*

- 14 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2019, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

*/s/ Timothy C. Blank*
Timothy C. Blank